IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SENSITRON, INC., <br><br> Plaintiff, <br><br><br><br> vs. <br><br><br><br> MICHAEL W. WALLACE, an individual, d/b/a PURE IMAGINATION, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO BIFURCATE <br><br><br><br><br><br> Case No. 2:06-CV-63 TS |

This matter is before the Court on Plaintiff's Motion to Dismiss and/or Strike Defendant's Counterclaims[1] and Defendant's Motion to Bifurcate Trial.[2]

I.  INTRODUCTION

Plaintiff in this action, Sensitron, is a Utah corporation that makes sensor technology for various applications.  In 1996, Plaintiff hired Defendant, doing business as Pure Imagination, to develop software-related toy products.  On December 3, 1996, Defendant entered into a non-

---

[1]Docket No. 41.

[2]Docket No. 52.

1

disclosure agreement with Plaintiff. Defendant later worked for Plaintiff on air bag deployment and seat-sensing technology ("the seat project"). Plaintiff supplied Defendant, who was located in Oregon, and later Washington State, with financial resources, employee support, and information. On March 3, 1999, Sensitron applied for, and on December 24, 2002, obtained, United States Patent 6,497,430 ("the '430 Patent") for technology developed in connection with the seat project. Also, while the facts are not clear from the memoranda, Sensitron apparently obtained U.S. Patent No. 6,015,163 (the "'163 Patent) in connection with the seat project.

On May 10, 2000, Defendant filed a patent application for technology allegedly developed in connection with the seat project. This application resulted in United States Patent No. 6,609,054 ("the '054 Patent"). On May 10, 2001, Defendant applied for patents worldwide under the Patent Cooperation Treaty ("PCT"). This application was published on November 15, 2001. The patent application and issuance list Defendant as sole inventor. Around August of 2000, the business relationship between Plaintiff and Defendant ended. It appears as though, at that time, the parties unsuccessfully attempted to negotiate ownership and inventorship issues related to work on the seat project. Several proposed agreements were drafted pursuant to these negotiations. On July 17, 2003, Defendant applied for another United States patent, serial no. 10/622,362 ("the '362 Application"). This application also lists Defendant as sole inventor. The parties subsequently failed to resolve the ownership and inventorship issues.

Plaintiff now brings a claim for correction of inventorship of the '054 Patent, as well as three state law claims, which include unjust enrichment, breach of a non-disclosure agreement, and violation of the Utah Uniform Trade Secrets Act. Defendant counterclaims, seeking correction of inventorship of the '430 and the '163 Patent—more specifically, to name him as

2

sole or joint inventor—and a declaration that these patents are invalid and unenforceable by Plaintiff.

Plaintiff now moves to dismiss or strike Defendant's counterclaims, arguing that there is no justiciable issue involving them. Defendant moves to bifurcate trial and trifurcate discovery. Having reviewed the memoranda, and heard oral argument, the Court rules as follows.

## II.  DISCUSSION

*A.  Plaintiff's Motion to Dismiss or Strike Defendant's Counterclaims*

Plaintiff moves to dismiss and/or strike Defendant's claims and allegations regarding the validity and unenforceability of the '430 and '163 Patents ("Defendant's Counterclaim").[3] Plaintiff argues that Defendant's Counterclaim for declaratory relief as to the invalidity of a patent is not justiciable. Plaintiff cites the Federal Circuit for the proposition that

> In the domain of suits for declarations of patent rights and relationships, a two part test for determining justiciability has evolved. . . .
>
> There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.[4]

Plaintiff argues that Defendant has not alleged that there is any indication that he faces an infringement suit, or that there is any present activity which could constitute infringement.

---

[3] While Plaintiff asks the Court to dismiss the "entire Counterclaim," the Court notes that Plaintiff also states that it "does not challenge [Defendant's] First Count I insofar as it alleges a Section 256 claim for inventorship rather than invalidity." The Court construes Defendant's Counterclaim to allege exactly this and, therefore, does not consider any issue before it as to correction of inventorship.

[4] *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995).

Defendant asserts that the Supreme Court—in the recent case of *MedImmune, Inc. v. Genentech, Inc.*[5]—has addressed the issue of justiciability in a declaratory judgment action for patent invalidity and unenforceability in the absence of reasonable apprehension of an infringement suit.  Defendant argues that all that is required for justiciability in this context is "a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[6]

Defendant further contends that this case fits within these parameters because: his request is brought within ongoing litigation; Plaintiff is not being dragged into unwanted litigation but is "trolling for investor opportunities by bringing time-barred claims against a former co-venturer;" and because Plaintiff has referenced its patents to support its inventorship claim to Defendant's patent.  Defendant also argues that justiciability is supported by the "interweaving of the inventorship" of the various patents.  Finally, Defendant argues that the rule set forth by Plaintiff applies only in the context of infringement litigation, as opposed to actions to correct inventorship.

Plaintiff replies that the *MedImmune* decision does not apply because its holding is limited to whether the Declaratory Judgment Act "requires a patent licensee to terminate or be in breach of its license agreement before it can seek a declaratory judgement that the underlying patent is invalid, unenforceable, or not infringed."[7]  Plaintiff argues that, as there is no license involved in this action, the Federal Circuit's test applies.

---

[5] 127 S.Ct. 764 (2007).

[6] *Id.* at 771.

[7] *Id.* at 767.

Significantly, in the recent period following the parties' filings, the Federal Circuit itself has recognized that, its two-part "reasonable apprehension" test was overruled by the Supreme Court's decision in *MedImmune*.[8] Contrary to Plaintiff's contention, the application of *MedImmune*'s reasoning has not been exclusively limited to the particular factual scenario of that case—in other words, to cases which only involve patent licenses.[9] Accordingly, based on the current state of the case law, the Court proceeds with the understanding that the standard of justiciability set forth in the *MedImmune* decision does apply in this case.

The sole requirement for federal court jurisdiction under Article III of the Constitution and the Declaratory Judgment Act is an "actual controversy."[10] An actual controversy may be demonstrated "by showing under 'all the circumstances' an actual or imminent injury caused by the defendant that can be redressed by judicial relief and that is of 'sufficient immediacy and

---

[8] *See Sandisk Corp. v. STMicroelectonics, Inc.*, No. 05-1300, 2007 WL 881008, at *7 (Fed. Cir. March 26, 2007) ("The Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test."); *Teva Pharm., Inc. v. Novartis Pharm. Corp.*, No. 06-1181, 2007 WL 942201, at **4, 12 (Fed. Cir. March 30, 2007) ("[F]ollowing *MedImmune*, we recognize that we are not relying on our two-part reasonable apprehension-of-suit test."). *But see WS Packaging Group, Inc., v. Global Commerce Group*, LLC, No. 06-C-674, 2007 WL 205559, at *2 n.3 (E.D. Wis. Jan 24, 2007) (stating that *MedImmune* should not be read so broadly as to set forth a new jurisdictional test for declaratory judgment actions); *Prasco, LLC v. Medicis Pharm.*, No. 1:06CV313, 2007 WL 928669, at *2 (S.D. Ohio March 27, 2007) ("The Court's decision may call into doubt the use of the 'reasonable apprehension of suit' test, but it did not overrule the line of cases outside of this factual scenario.").

[9] *See, e.g.*, *Teva Pharm.*, 2007 WL 942201, at *6 (holding that *MedImmune* applied to scenario where competitor, who had filed abbreviated new drug application for generic drug, brought action against patent holder for declaratory judgment on validity or infringement of method patents not challenged in holder's suit alleging infringement of drug patent). *But see Prasco*, 2007 WL 928669, at *2 (holding that *MedImmune* does not apply outside factual scenario in that case).

[10] *Teva Pharm.*, 2007 WL 942201, at *4 (citing *Aetna Life Ins. Co. v. Haworth et al.*, 300 U.S. 227, 239-41 (1937)).

reality to warrant the issuance of [, in the context of a declaratory judgment action,] a declaratory judgment.'"[11]

> An "actual controversy" requires only that a dispute be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.'"[12]

The traditional elements for such include standing, ripeness, and an injury-in-fact, with the latter being the most determinative.[13]  "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."[14]

The Federal Circuit has characterized the Supreme Court's rejection of its "reasonable apprehension" test as broadening the scope of injuries-in-fact which meet the "actual controversy" requirements of Article III and, therefore, the Declaratory Judgment Act.[15] However, despite this broadened scope, in the context of declaratory judgment actions seeking invalidity or non-infringement of patents, it appears that neither *MedImmune*, nor the cases that

---

[11]*Id.* (citing and quoting *MedImmune*, 127 S.Ct. at 771).

[12]*Id.* at *5 (quoting *MedImmune*, 127 S.Ct. at 771 (quoting *Aetna Life Ins.*, 300 U.S. at 240-41)).

[13]*Id.* at *3.

[14]*Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1346 (11th Cir. 1999); *see also Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991).

[15]*See Teva Pharm.*, 2007 WL 942201, at *5 (stating that, under old standard, district court held that plaintiff "had failed to establish the type of injury-in-fact" that the Federal Circuit had previously required, *i.e.*, a reasonable apprehension of imminent suit).

follow it, have given any indication that an injury-in-fact may exist absent (a) *any* activity by the seeking party which could be identified as potential current or future infringement, or (b) some form of ongoing injury—such as the compulsory payment of royalties under a license—which, if removed, could result in potential current or future infringement.

For example, in *MedImmune*, the Supreme Court found that an injury existed where a licensee had a choice to either "pay[] royalties under compulsion of an injunction" or face an infringement suit.[16] In *Teva Pharm. v. Novartis Pharm. Corp.*, the Federal Circuit found an injury where plaintiff—after filing an Abbreviated New Drug Application ("ANDA") with the FDA—subsequently faced an infringement suit as to one patent, and an ongoing threat of infringement litigation as to several other patents because "the very act of submitting an ANDA is an act of infringement."[17] Finally, in *SanDisk Corp v. STMicroelectronics NV*, the Federal Circuit found an injury where, after several pre-suit meetings between the patent-holding parties where infringement analyses were shared and licensing discussed, one party subsequently brought an infringement action relating to one patent, and sought declaratory judgment of noninfringement on several more of the other party's patents.[18] The *SanDisk* court emphasized that a "party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights."[19] Other post-*MedImmune* cases are consistent with the premise that, in order to declare judgment on patent invalidity or noninfringement, the type of

---

[16]*MedImmune*, 127 S.Ct. at 771 at 774 n.11.

[17]2007 WL 942201, at *7.

[18]2007 WL 881008, at **3, 7.

[19]*Id.* at *7.

7

injury contemplated must either flow from potentially current or future infringing activity or that, but for another ongoing identifiable injury, such activity would occur.[20]

It appears to the Court that, absent some potential activity by the counterclaiming Defendant which could potentially constitute infringement, or some ongoing injury which, if removed, could result in infringement, Defendant's Counterclaim is not justiciable. The Court is particularly troubled by the fact that it finds no cases which hold that declaratory judgment on the issue of patent invalidity upon grounds of inequitable conduct—absent any potential current or future infringement—is proper. Accordingly, absent any suggestion of potential infringement, either current or future, or other identifiable actual or imminent injury caused by Plaintiff (or counterclaim Defendant) there is no injury that can be redressed by judicial relief and that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Accordingly, the Court finds no justiciable issue as to Defendant's Counterclaim.[21]

In connection with this finding, the Court notes that "Congress has conferred no jurisdiction on the federal courts to adjudicate a patent's validity in a Section 256 action to correct inventorship."[22] Considering this, the Court finds that it would be unusual, and thus,

---

[20]*E.g., Highway Equip. Co., Inc. v. Cives Corp.*, No. 04-CV-147-LRR, 2007 WL 689766, at *3 (N.D. Iowa March 7, 2007); *Rite-Hite Corp. v. Delta T Corp.*, No. 06-C-1187, 2007 WL 725327, at *8 (E.D. Wis. March 7, 2007).

[21]The Court finds no authority that supports that the use of Plaintiff's patents merely as evidence as to an unrelated claim (in this case, correction of inventorship) is sufficient injury to find Defendant's Counterclaim (seeking declaratory judgment for inequitable conduct) justiciable.

[22]*Oregon Health & Sci. Univ. v. Vertex Pharm., Inc.*, 233 F.Supp.2d 1282 (D. Ore. 2002) (citing *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1555 (Fed. Cir. 1997) and stating that "any potential invalidity [in *Stark* which was based on fraud or inequitable conduct] was irrelevant to the claim of inventorship by [the plaintiff]").

unlikely, for Congress to have intended to confer such jurisdiction through the Declaratory Judgment Act. Aside from the discussion on the present issue, this is a Section 256 action to correct inventorship. Expanding the correction of inventorship action to a patent validity action would be premature, and doing so under the guise of the Declaratory Judgment Act would improperly facilitate gamesmanship among the parties. Therefore, the Court will grant Plaintiff's Motion.

### B. Defendant's Motion to Bifurcate Trial

Defendant moves for a bifurcation of the issues of liability and damages at trial, as well as a separation of discovery into the following three phases (1) statute of limitations defenses, (2) liability issues, and (3) damages. Plaintiff opposes Defendant's Motion.

Under Fed. R. Civ. P. 42(b), a court "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim." A trial court has broad discretion in any decision relating to bifurcation.[23] However,

> the presumption is that the plaintiff, in a typical case, should be allowed to present her case in the order she chooses. The burden is on the defendant to convince the court that a separate trial is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties.[24]

Moreover, some cases suggest that a court should consider the following factors in making its determination: (1) judicial economy, (2) convenience to the parties, (3) expedition,

---

[23] *See Easton v. City of Boulder*, 776 F.2d 1441, 1447 (10th Cir. 1985).

[24] *Patten v. Lederle Labs*, 676 F.Supp 233, 238 (D. Utah 1987).

and (4) avoidance of prejudice and confusion.[25] Also, when separate trials are ordered, a court may stay discovery of the issues to be tried in the second trial pending resolution of the first action.[26]

Defendant argues that the state law claims will require "complex liability and damages proofs [including] compensatory, exemplary, and enhanced/punitive damages," whereas, the patent claims do not contemplate any damages. Defendant then presents various scenarios of jury outcomes on the issues in dispute and ultimately concludes that damages may not need to be addressed, or that addressing the issues piecemeal will facilitate settlement. Defendant next asserts that bifurcation is appropriate because liability and damages are different in nature and scope. Finally, Defendant concludes that bifurcation will avoid prejudice to Defendant and avoid jury confusion.

Plaintiff argues that bifurcation of trial, and consequently, trifurcation of discovery is not necessary and that Defendant does not give adequate explanation for why this trial is so complicated as to merit bifurcation.

This Court agrees with Plaintiff in that Defendant has not met his burden in convincing it that bifurcation of this trial is necessary. The issues now presented before this Court, and that would be before a jury at trial, do not require division in order to achieve judicial economy, convenience to the parties, expedition, and avoidance of prejudice and confusion. Rather, after reviewing the abovementioned factors and the arguments of the parties, the Court is convinced that this is a "typical case" and that allowing the matters to proceed together is more appropriate.

---

[25]*In re Innotron Diagnostics*, 800 F.2d 1077, 1085 (Fed. Cir. 1986); *Ecrix Corp. v. Exabyte Corp.*, 191 F.R.D. 611, 613 (D. Colo. 2000).

[26]*See, e.g.*, *Ellingson Timber Co. v. Great N. Ry Co.*, 424 F.2d 497, 499 (9th Cir. 1970).

Because the Court declines to bifurcate the trial, it need not address Defendant's request to trifurcate discovery.

### III.  CONCLUSION

For the foregoing reasons, it is therefore

 It is therefore

ORDERED that Plaintiff's Motion to Dismiss/Strike Defendant's Counterclaim (Docket No. 41) is GRANTED.

ORDERED that Defendant's Motion to Bifurcate Trial (Docket No. 52) is DENIED.

SO ORDERED.

DATED   May 2, 2007.

                                BY THE COURT:

                                _____
                                TED STEWART
                                United States District Judge